**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Tony James DIMITROFF,**
**Defendant-Appellant.**

No. 76–1347.

United States Court of Appeals,
Sixth Circuit.

Submitted June 16, 1976.

Decided Sept. 9, 1976.

some secure space under the control of the custodian as the storage location.

Thomas W. Jakuc, Warren, Mich., for defendant-appellant.

Frederick S. Van Tiem, U.S. Atty., John L. Christensen, Detroit, Mich., for plaintiff-appellee.

Before WEICK and ENGEL, Circuit Judges, and LAMBROS,* District Judge.

WEICK, Circuit Judge.

This appeal presents a number of evidentiary problems which arose during the trial of Tony Dimitroff upon four counts of possessing controlled substances with intent to distribute, in violation of 21 U.S.C. § 841. After hearing the case which involved some circumstantial evidence the jury found Dimitroff guilty on all four counts.

Dimitroff was a drug salesman who solicited orders on behalf of several drug distributors from physicians and retail druggists. Count I of the four-count indictment charged him with possessing 500 10-cc. vials of Phendimetrazine; Count II charged possession of 37,800 Phendimetrazine tablets;

---

* Hon. Thomas D. Lambros, Judge of the United States District Court for the Northern District of Ohio, sitting by designation.

Count III charged possession of 50,000 dextro-amphetamine sulfate capsules; and Count IV charged possession of four gallons of pharmatussin cough syrup which contains codeine. The drugs identified in Counts I to III were allegedly shipped by Pharmecon, Inc., and Coffman Pharmacal Company to Dr. Russell Ervin, a customer of Dimitroff. Dr. Ervin died some time after receiving the shipments; during the probate of his estate Coffman filed in the proceeding a sworn claim asserting that Dr. Ervin had never paid for a shipment of 50,000 dextro-amphetamine sulfate capsules. The executor countered with Dr. Ervin's copy of the shipping invoice of Coffman dated February 15, 1974, on the face of which was handwritten "Picked up for credit Tony Dimitroff 3/19/74" and an affidavit signed by Dimitroff stating that he had picked up the shipment from Dr. Ervin without Coffman's knowledge and had signed Dr. Ervin's invoice as it appeared. This disclosure apparently led to an investigation culminating in the indictment described above.

At the trial the government's proof as to Counts I and II was as follows: George Hissong, president of Pharmecon, testified that Pharmecon had shipped the drugs to Dr. Ervin and had not been paid for them. The government introduced into evidence as Exhibit A a customer copy of Pharmecon's invoice to Dr. Ervin dated July 31, 1973, showing the shipments of these drugs on said date to Dr. Ervin. The invoice copy bore the signature of Tony Dimitroff dated 10/16/73. Mr. Hissong identified the signature but no one testified as to the custody of this document at Dr. Ervin's office. Finally, Mr. Hissong testified that Dimitroff told him that Dr. Ervin had returned the shipment but that Pharmecon records did not reveal any returns from Dr. Ervin.

The proof on Count III consisted of an affidavit from the president of Coffman which was used to prove its claim against Dr. Ervin in the Probate Court administering his estate. The affidavit asserted that he (the president) had shipped the amphetamines to Dr. Ervin and had never been paid

for them. Dimitroff's affidavit and Dr. Ervin's invoice copy signed by Dimitroff, as used in the Probate proceeding to defend against Coffman's claim, were also introduced along with Coffman's invoice showing the shipment to Dr. Ervin.

The proof on Count IV consisted of Pharmecon's invoice and Mr. Hissong's testimony that the cough syrup had been shipped to Henderson Pharmacy, which had never paid for the shipment. Mr. Henderson testified that he did not order the cough syrup; that Dimitroff told him it had been sent by mistake; and that Dimitroff had later picked up the shipment.

Only on Count IV was there any oral testimony that Dimitroff was in possession of the controlled substance. On Count III possession was shown by the affidavit signed by Dimitroff, which constituted his own admission of possession. Possession in Counts I and II could be found only by inference. Under the facts of this case the jury could properly draw such an inference.

The government also attempted to prove intent by introducing testimony on an undercover police officer that Dimitroff had sold him controlled substances in February 1973, about one year before the acts for which Dimitroff was being tried. In addition the government attempted to introduce into evidence, in the presence of the jury, a certified record of a prior criminal conviction of Dimitroff but the Court refused to accept the evidence and cautioned the jury to disregard the proffer.

After the jury returned guilty verdicts on all four counts, the Court sentenced Dimitroff to three years each on Counts I, II and III; to one year on Count IV; and fined Dimitroff $2500. The sentences were to be served concurrently, to be followed by a special parole.

■ Dimitroff has challenged the sufficiency of the evidence to support the verdicts on all four counts. As before stated as to Count III, the government produced an affidavit signed by Dimitroff in which he admitted taking possession of the drugs from Dr. Ervin, without authorization from or notice to Coffman. Dimitroff did not

**632**

attempt to challenge either the authenticity of his affidavit or the truth of its contents. The uncontroverted affidavit constitutes strong evidence that Dimitroff indeed possessed the drugs. The large amount of drugs possessed by Dimitroff permits the jury properly to infer that he intended to distribute them.

■ Dimitroff contends that his own affidavit was inadmissible hearsay, but that document clearly constitutes an admission against interest and is therefore not hearsay, according to Fed.R.Evidence 801(d)(2). Dimitroff also contends that the affidavit was inadmissible because it was not accompanied by independent evidence showing its trustworthiness. Coffman's proof of claim and the invoice copy signed by Dimitroff in our opinion, constituted independent evidence of trustworthiness. Dimitroff further contends that Coffman's proof of claim and the invoice copy signed by Dimitroff were inadmissible as hearsay. However, we construe these items as evidence of the trustworthiness of Dimitroff's affidavit. For that purpose these items are not hearsay. Even though the District Court did not qualify the use of those items by limiting instructions, the strength of the government's case built upon the affidavit, leads us to conclude that no prejudicial error occurred in admitting these items into evidence.

■ The use of Dimitroff's affidavit is also challenged on the ground that it violates a rule requiring proof of a corpus delicti prior to introduction of an admission or confession into evidence. Federal Courts do not require independent proof of a corpus delicti prior to admitting an admission; they only require that the government show at some point independent proof that the admission is trustworthy. *Smith v. United States,* 348 U.S. 147, 156, 75 S.Ct. 194, 99 L.Ed. 192 (1954); *McCormick on Evidence* § 158 (2d ed. 1972).

■ The proof of Count IV was also strong. Mr. Hissong testified that Pharmecon had sent the cough syrup to Henderson Pharmacy; that it had not been paid for; and that no record of any return of the drug existed. Mr. Henderson testified that he had not ordered the cough syrup; and that Dimitroff had picked up the shipment from him after explaining that the shipment was a mistake. Possession was thus established and the jury could properly infer from the quantity of cough syrup that Dimitroff intended to distribute at least a portion of it.

In Counts I and II the only evidence of possession was an invoice copy bearing the dated signature of Dimitroff which apparently was obtained from Dr. Ervin's records (Exhibit 4). Dimitroff claims that Exhibit 4 was inadmissible as a business record to prove the transaction between Dr. Ervin and Dimitroff because no testimony was presented as to the significance of his signature on the invoice. It is true that Mr. Hissong was not competent to testify as to the significance of the signature on the invoice. He was competent to testify only that the invoice copy was prepared by Pharmecon in the regular course of its business; that it signified the shipment of drugs identified in Counts I and II; and that the signature thereon was that of Dimitroff. That was in fact the extent of his testimony as to Exhibit 4. Having such testimony before it, the jury could infer that the signature evidenced the fact that Dimitroff had picked up the drugs from Dr. Ervin on the date indicated thereon because the jury also had before it Dimitroff's affidavit in which he admitted doing a similar act in signing an invoice copy when picking up the drugs for credit, as charged in Count III.

We find no prejudicial error in admitting these items as evidence and we find that the evidence supports the jury's verdicts on all four counts.

The most serious question raised is whether the Court should have granted a mistrial after the Prosecutor moved to admit a certified record of a prior conviction of Dimitroff, in the presence of the jury, and the Court ruled that such record was inadmissible. The jury thus heard the following exchange:

MR. CHRISTENSEN: [The government] also, your honor, would like to move for the admission of proposed government Exhibit No. 9, which is a certified copy of a conviction of Tony Dimitroff which has been shown to counsel.

MR. JANUS: Your honor, I have to—at this point, your honor, there is something that I would like to discuss with the court outside the presence of the jury.

The jury was excused and Dimitroff's counsel moved for a mistrial. The Prosecutor argued that the District Court had previously ruled in chambers that the prior conviction would be admissible to prove motive or plan. However, the District Court apparently changed its mind and ruled as follows:

Well, the court is not going to let it in. The Court feels as though it would be prejudicial also and will not allow that to come in.

After the jury returned, the Court gave the following instruction:

Now, members of the jury, there has been some reference to a prior conviction of the defendant and the court would like to tell you that that is not before you in any regard. You are charged here with the responsibility of trying Mr. Tony Dimitroff as it relates to this indictment that is presently in this court.

The court would ask you to completely refrain from considering what has been said as it relates to any other matters pertaining to a conviction of the defendant and it is not to be so considered by you at all.

Dimitroff asserts that the reference to a prior conviction was improper and must be presumed to have prejudiced the jury against him in view of the circumstantial nature of the government's case. We disagree. The government had already shown through testimony of an undercover police officer that Dimitroff had sold controlled substance to him in the past, to prove intent or lack of mistake. Any reference to a prior conviction would be merely cumulative evidence. The Judge gave a caution-ary instruction which was adequate under the circumstances and we will presume here that the jurors were capable of fulfilling their oath and following his instruction. We also note that the strength of the evidence as to Counts III and IV is such that Dimitroff cannot ask for a presumption of prejudice. Dimitroff has not shown any specific indication of prejudicial impact upon him. In view of the fact that Dimitroff received concurrent sentences, we need not decide whether the circumstantial nature of some of the proof as to Counts I and II caused the reference to a prior conviction to be prejudicial to him on those counts. Finally, there was no prosecutorial misconduct here, since the Prosecutor made this remark in reliance upon a prior holding of the District Judge that the prior conviction would be admissible.

The judgment of the District Court is affirmed.