UNITED STATES of America, Appellee,

v.

Charles M. HILL, Appellant.

No. 78–1246.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 16, 1978.

Decided Jan. 4, 1979.

Rehearing and Rehearing En Banc Denied Feb. 2, 1979.

James M. Martin of Rau & Martin, St. Louis, Mo., for appellant.

David V. Capes, argued, Asst. U. S. Atty., St. Louis, Mo., on brief, Robert D. Kingsland, U. S. Atty., St. Louis, Mo., on brief, for appellee.

Before STEPHENSON and HENLEY, Circuit Judges, and LARSON,* Senior District Judge.

STEPHENSON, Circuit Judge.

Appellant-defendant Charles M. Hill was found guilty by a jury of 32 of 34 counts in an indictment [1]—16 of 17 counts of illegal acquisition by fraudulent means of a diet pill known as Phendimetrazine,[2] and 16 of 17 counts of possession with intent to distribute Phendimetrazine.[3]

Hill appeals from his conviction alleging various errors by the district court.[4] We have carefully reviewed the record and the law in regard to each of Hill's claims and we find no prejudicial error by the district court. The convictions are affirmed.

---

* The Honorable Earl R. Larson, Senior United States District Judge for the District of Minnesota, sitting by designation.

1. After a study under 18 U.S.C. § 4205(c), (d), Hill was sentenced to concurrent sentences on all counts of three years imprisonment and a two-year special parole term.

2. 21 U.S.C. § 843 provides in pertinent part:
    (a) It shall be unlawful for any person knowingly or intentionally—
    * * * * * *
    (3) to acquire or obtain possession of a controlled substance by misrepresentation, fraud, forgery, deception, or subterfuge * *.

3. 21 U.S.C. § 841 provides in pertinent part:
    (a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—
    (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance * * *.

4. The Honorable John F. Nangle, United States District Judge for the Eastern District of Missouri.

The factual basis for each of the counts of fraudulent acquisition and counts of possession with intent to distribute are similar. Hill was, at all times mentioned in the indictment, the midwestern regional sales manager for Lemmon Pharmacal Company, a drug manufacturer registered under 21 U.S.C. § 822.[5] One of the drugs that Lemmon produced was a diet pill known by its trade name, Statobex-D, which contained a Schedule III controlled substance, Phendimetrazine. 21 U.S.C. § 812. It is this drug with which the convictions are concerned.

The government's case against Hill insofar as this appeal is concerned consisted of showing that on 16 different occasions Hill arranged for an order of Statobex-D to be shipped to a customer in Hill's sales territory. Thereafter Hill would generally contact the customer, say that there had been a mistake, and state that Hill would pick up the shipment and correct the error.

There was additional evidence presented by the government showing that the 16 shipments which Hill allegedly picked up (in order to correct the error) were never returned to Lemmon; further, Lemmon's records reflect that all such shipments were paid for by someone, although all of the customers to whom the orders were originally shipped denied making such payment.

The government then established that in the event an order was paid for and later returned unused, a credit would be entered into that customer's records. In the 16 transactions herein, the customers received no credit for the supposedly returned shipments.

Finally, the government's evidence indicated that the amount of Statobex-D that Hill allegedly possessed was of sufficient quantity such that the jury could infer intent to distribute.

Hill's primary defense at trial was that he was at all times acting within the course of his employment. Hill argues that Lemmon "tolerated" a practice known as sliding. If customer A wanted to order some Statobex-D, he would initially be eligible for an introductory bonus, i. e., if he ordered 10,000, he could get 10,000 free. After he had taken advantage of this special introductory offer he would not be eligible for it again, at least for quite some time. The sales personnel, in order to keep customer A happy, would place an order for Statobex-D through customer B, who was still eligible for the introductory bonus (presumably with B's permission), and pick the order up at B's office and deliver it to A. Payment for the shipment could be accommodated by having A pay the salesman; the salesman would then purchase a cashier's check and submit payment for the drugs, supposedly as payment by B.

Hill further contends that the government failed to show that he was in either actual or constructive possession or that he possessed the Phendimetrazine with the intent to distribute.

The foregoing is indicative of the general nature of the government's case and Hill's defense in connection with each transaction. To illustrate by use of a specific example, we refer to counts I and II in which, respectively Hill was charged with possessing and intending to distribute 20,000 dosage units of Phendimetrazine (Statobex-D) in violation of 21 U.S.C. § 841(a)(1), and acquiring and obtaining by fraud such units of Phendimetrazine (Statobex-D), in violation of 21 U.S.C. § 843(a)(3), on or about February 11, 1974, at the City of Doniphan, Missouri.

The government offered a memorandum of an order that was called in by Hill to

---

5. 21 U.S.C. § 822 provides in pertinent part:
   (a) Every person who manufactures, distributes, or dispenses any controlled substance or who proposes to engage in the manufacture, distribution, or dispensing of any controlled substance, shall obtain annually a registration issued by the Attorney General in accordance with the rules and regulations promulgated by him.
   \* \* \* \* \* \*

   (c) The following persons shall not be required to register and may lawfully possess any controlled substance under this subchapter:
   (1) An agent or employee of any registered manufacturer, distributor, or dispenser of any controlled substance if such agent or employee is acting in the usual course of his business or employment.

Lemmon Pharmacal Company for 10,000 Statobex-D and 10,000 bonus (10,000/10,000), on February 1, 1974;[6] a confirming order mailed in by Hill in regard to the phone call; and an office copy of the invoice in connection with the order. The documents gave sufficient evidence by which the jury could draw the conclusion that the 10,000/10,000 order was called in by Hill; that it was subsequently confirmed by Hill with a written order which Hill prepared; and that a 10,000/10,000 quantity of Statobex-D was shipped, pursuant to the order and Hill's directions, to Dr. Gene Leroux, Summit Street, Doniphan, Missouri, by United Parcel Post on January 31, 1974.[7]

Additional testimony solicited from Dr. Leroux and his pharmacist and partner, Mr. Spencer, established that the 10,000/10,000 quantity order of Statobex-D had not been authorized or approved by either of them, that Hill had said that he would take care of the order, that the order was set aside, and that Hill picked it up.

The government also presented a cashier's check which had Dr. Leroux as the remitter, but with his name spelled "LeRoux" as opposed to the proper spelling, "Leroux." The cashier's check had the same identifying number on it as the invoice for the 10,000/10,000 order and Dr. Leroux and Mr. Spencer denied purchasing the cashier's check or paying for the order in any manner. The government also showed that there was no credit on Leroux's account for the cost of the shipment.

Finally, a stipulation was read to the jury which stated that "if representatives of Security National Bank of Sikeston, Missouri, were called to testify they would testify that during the period [of the indictment] Charles M. Hill had customer accounts at [the bank] and did purchase money orders [there]," and that the cashier's check

presented in connection with counts I and II was purchased at the Security National Bank of Sikeston, Missouri.

Hill argues that the government's evidence is not inconsistent with his contention that he was engaged in "sliding" to keep his customers happy, and that the government failed to carry its burden of proof required in a criminal case. Hill established that Dr. Leroux was aware of the sliding; that Leroux ordered drugs in his name and received them at his office in order to obtain bonuses that were not available to the pharmacy which he and Mr. Spencer held as partners. Mr. Spencer would then pay for the drugs that were to be used by the pharmacy.

Hill specifically charges that the government's evidence was inadequate inasmuch as Mr. Spencer was, first of all, only one of two witnesses that had ever opened and identified the contents as Statobex-D of the shipments in question, and that even Mr. Spencer could not identify any of the shipments as the government exhibits.

■ The evidence in this case is largely circumstantial, however, "a fact in issue in a criminal case, including criminal intent and the ultimate fact of guilt or innocence of a criminal charge, may be proved by circumstantial as well as direct evidence." *United States v. Wisdom,* 534 F.2d 1306, 1309 (8th Cir. 1976).

■ Thus, the evidence that the shipments were never returned to Lemmon for credit, that Hill had volunteered to pick up the shipments and take care of the matter, that Hill did go to the customers' offices and take the pills (although there were not always eyewitnesses), is sufficient to show possession.

■ That the government did not "seize" the drugs in question from Hill, or that the government had no direct evidence

---

6. The bonus was a sales gimmick of Lemmon's that gave the customer a chance to buy, on an introductory basis, the product and have the equivalent amount as a bonus. The customer could theoretically use all of the bonus tablets and then, if dissatisfied, return the primary 10,000 and receive full credit—in effect, trying the product at no cost.

7. The telephone message and the confirming order were both dated February 1, 1974. The invoice was dated January 31, 1974; it appears that the invoice was probably misdated by one day. This was not raised as an issue by Hill.

to show that Hill had the drugs in his possession does not defeat the reasonable inference that Hill arranged for the drug orders and pickups in order to gain possession of the drugs, and that he succeeded in so doing. Further, Hill's claim that none of the government witnesses could identify the contents of any of the specific shipments as Statobex-D does not defeat the reasonable inference of the evidence presented that the boxes did contain Statobex-D. *See United States v. Iacopelli,* 483 F.2d 159, 161 (2d Cir. 1973).

Finally, it is well established in this court that a jury can infer a defendant's intent to distribute from the quantity of drugs in a defendant's possession. *See United States v. Marchildon,* 519 F.2d 337, 344–45 (8th Cir. 1975); *United States v. Wilkerson,* 478 F.2d 813, 815 (8th Cir. 1973). *See also United States v. Dimitroff,* 541 F.2d 629, 631–32 (6th Cir. 1976); *United States v. King,* 485 F.2d 353, 356–57 (10th Cir. 1973). The smallest quantity charged in the indictment is 10,000 dosage units. Some of the counts involved quantities of 100,000 dosage units. The total amount, discounting the pair of counts on which Hill was acquitted, was 625,000 dosage units. This is more than sufficient evidence from which a jury can validly infer intent to distribute.

We conclude that there is sufficient evidence to support the jury verdicts of guilty on all counts of the indictment charging violation of 21 U.S.C. § 841(a)(1).

Hill's principal contention on appeal is that, in his position as a salesman for a registered manufacturer of drugs, he was exempt from registration by the provisions of 21 U.S.C. § 822. *See* footnote 5, *supra.* Therefore, because sliding was, according to Hill, tolerated by Lemmon and thus within the usual course of business, Hill contends that section 841(a)(1) is not applicable to him.

There was sufficient evidence for the jury to conclude that sliding was not authorized or tolerated by Lemmon; further, neither the authorization of the action for the sales personnel of a pharmacal company nor the exemption in 21 U.S.C. § 822 legitimizes illegal activities. Finally, the trial court instructed the jury that if it found that Hill acquired possession of the controlled substance in the usual course of business, it must find him not guilty of all charges. The burden of proving he was not acting in the usual course of business was upon the government, and the court so instructed. The circumstantial evidence in this case clearly supports the inference that Hill was acting outside the usual course of business and that the shipments of Statobex-D were diverted from legitimate business channels of distribution. *See United States v. Rosenberg,* 515 F.2d 190, 192–96 (9th Cir.), *cert. denied,* 423 U.S. 1031, 96 S.Ct. 562, 46 L.Ed.2d 404 (1975), for an excellent discussion of an analogous situation. *See also United States v. Moore,* 423 U.S. 122, 96 S.Ct. 335, 46 L.Ed.2d 333 (1975).

Hill alleges several other errors in addition to his claims of insufficient evidence and exemption as a salesman. The first of these is that he was limited in his cross-examination of two government witnesses, DeGatis and Grim. Hill contends that he should have been allowed to cross-examine the former Lemmon employees about, inter alia, governmental investigations of Lemmon's business, conflicts in the drug manufacturing field between dispensing and prescribing physicians,[8] a Medicare policy restricting payments to prescribing physicians, and the standard type of letter accompanying a credit invoice. Hill argues that had such cross-examination been allowed, he would have been able to show the witnesses' motivation for lying in regard to whether Hill was acting in the usual course of business. .

The record discloses that Hill was allowed to thoroughly cross-examine the government witnesses. Those matters on which the trial court prohibited inquiry were either repetitive, irrelevant or imma-

---

**8.** Dispensing physicians hand out drugs to patients at the office; prescribing physicians write out prescriptions which must be filled at a drugstore.

terial. The credibility of the witnesses was fully tested and Hill was not prejudiced by the trial court's limitations.

In addition, Hill submits that the trial court unduly restricted the testimony of two of Hill's own witnesses who were former Lemmon salesmen, Ballard and Cheli, in regard to the sales practices of Lemmon in connection with the alleged sliding scheme.

So far as the trial court's restrictions on Hill's direct examination of his own witnesses are concerned, the primary issue was relevancy and materiality. Ballard had not worked for Lemmon since 1967, seven years prior to the years concerned in the indictment; Statobex-D was not even in existence in 1967. Noting the disparity in time, and the repetitiveness of testimony in connection with sliding, the trial court restricted Ballard's testimony to the relevant time period of inquiry, the years concerned in the indictment. Hill consequently chose not to put Ballard on the stand to testify.

Hill's other witness, Cheli, was prohibited from testifying as to Lemmon's sales practices in 1973 in connection with a non-controlled drug named Apidex. The court ruled such inquiry irrelevant to the issues in the case.

> [T]he court recognize[s] that where the credibility of a government witness is involved, defense counsel should be permitted a wide latitude in cross-examination. But * * * a trial judge [also] not only has a right but also a duty to exercise "such control over the scope of the examination as is necessary to prevent the parties from unduly burdening the record with cumulative or irrelevant matter." * * * In the last analysis, the scope of the examination and cross-examination of a witness must be determined by the trial court in the exercise of its discretion.

*United States v. Quinn,* 543 F.2d 640, 651 (8th Cir. 1976), *quoting from Harris v. United States,* 371 F.2d 365, 366 (9th Cir. 1967).

■ We conclude that Hill was granted sufficient latitude on the direct examination of his own witnesses, such that no prejudice occurred. The trial court did not abuse its discretionary control over the scope of the examination and cross-examination of the witnesses and we find no error in this regard.

Hill's further allegations of error include the trial court's denial of several motions, including a denial of a motion to elect. Hill contends that this denial subjected him to duplicious prosecution in that the element of possession is essential to charges under 21 U.S.C. § 841(a)(1), *and* 21 U.S.C. § 843(a)(3); consequently, the acquittal of one count would necessarily be followed by the acquittal of another count.

■ The matter of election between counts of an indictment depends upon the distinctiveness of the charges. The statutory elements of these offenses are distinct. For 21 U.S.C. § 843(a)(3), the government must show that the defendant acquired and *obtained possession* of the drugs in question *by misrepresentation, fraud, forgery, deception or subterfuge.* Under 21 U.S.C. § 841(a)(1), the defendant's possession *with intent to distribute* must be proven. One count deals with how a defendant obtained the drugs; the other count deals with what he intended to do with them. The trial court correctly denied Hill's motion to elect. *See Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *Wangrow v. United States,* 399 F.2d 106, 112 (8th Cir.), *cert. denied,* 393 U.S. 933, 89 S.Ct. 292, 21 L.Ed.2d 270 (1968). *See also Kistner v. United States,* 332 F.2d 978, 980–81 (8th Cir. 1964); *United States v. Harris,* 211 F.2d 656 (7th Cir.), *cert. denied,* 348 U.S. 822, 75 S.Ct. 34, 99 L.Ed. 648 (1954).

■ The trial court also denied defendant's motion for a bill of particulars, Fed.R.Crim.P. 7(f), and Hill claims this prevented his knowledge of the persons who were defrauded in connection with section 843(a)(3), and persons who could put him in possession of the shipments. It appears from the record that there was sufficient information in the indictment to inform defendant of the charges against him and

to prevent any element of surprise at trial. The indictment adequately informed Hill of the dates and places and quantities involved in the counts. A bill of particulars is not to be used for discovery purposes. *See United States v. Little,* 562 F.2d 578, 581 (8th Cir. 1977); *Hemphill v. United States,* 392 F.2d 45 (8th Cir.), *cert. denied,* 393 U.S. 877, 89 S.Ct. 176, 21 L.Ed.2d 149 (1968). The trial court did not abuse its discretion in denying the motion, and Hill was not prejudiced by the denial.

■ The trial court also denied Hill his "Motion to Inspect and Examine the Records of Lemmon Pharmacal" and a proposed "Order and Subpoena Duces Tecum," filed a few days before trial. This is a matter of trial court discretion, *United States v. Bailey,* 550 F.2d 1099, 1100 (8th Cir. 1977), and defendant has failed to show an abuse thereof.[9]

Hill next challenges the trial court's refusal of several proposed instructions to the jury, and the trial court's refusal to allow the jury to have a copy of the instructions. Only two of Hill's requests merit discussion: (1) a request for a specific definition of fraudulent intent; and (2) a request for a "position instruction."

■ Upon a reading of the instructions as a whole, we find there was no prejudice resulting to Hill from the refusal of these or any of the other requested instructions. The trial court explained to the jury that "fraud" was used in its ordinary sense and could include "intentional misstatements, concealment, or nondisclosure for the purpose of inducing another to act in reliance thereon." The court further instructed the jury that Hill's actions must have been knowing and intentional. Thus the refusal of Hill's request for the "fraudulent intent"

instruction "from Devitt and Blackmar 54.-14" was not prejudicial in that, as a whole, the trial court sufficiently instructed the jury on the matter.

■ Hill's requested "position" instruction would have set out that Hill's position was that Lemmon Pharmacal approved in practice "the course of conduct consisting of transferring consignments of goods from one destination to another in the usual course of business." The giving of a position instruction is discretionary, *United States v. Brown,* 540 F.2d 364 (8th Cir. 1976), and further, the trial court did specifically instruct that if Hill acquired possession of the controlled substance in the usual course of business, he must be found not guilty.[10] Thus, again reading the instructions as a whole, we find that the refusal of Hill's position instruction was not error, inasmuch as the trial court adequately instructed the jury as to the defense of "usual course of business," and therefore there was no prejudice to Hill.

■ We also find no prejudice in the court's refusal of the other instructions requested by Hill, and no error in refusing to give the jury a copy of the instructions. The issue of giving the jury a copy of the instructions is one to be resolved at the discretion of the trial court, and the length and complexity of this trial was not such that it was an abuse of discretion to refuse to do so. *See United States v. Conley,* 503 F.2d 520 (8th Cir. 1974).

■ Hill's next argument is that the trial court erred in refusing to grant a mistrial, largely on the basis that the government's remarks in closing argument reflected upon Hill's failure to testify. We find no error in the trial court's ruling on the objections made during closing argu-

---

**9.** A comprehensive motion for discovery was filed over two months before trial, much of which was complied with voluntarily by the government.

**10.** The court included as one of the essential elements of both offenses, which the govern-

ment must prove beyond a reasonable doubt, "Fourth, that defendant was not thereby acting in the usual course of his business or employment as an agent or employee of Lemmon Pharmacal Company."

ment and additionally, in denying defendant's motion for a mistrial. At only one point did the government comment upon the fact that there was "no evidence to rebut" the government's evidence. At that time the trial court gave the appropriate cautionary instructions, explaining to the jury the government's burden and further, that the defendant had no burden to place any evidence before the jury and that therefore the government's remark would be ordered stricken. *United States v. Thurmond,* 541 F.2d 774, 776 (8th Cir. 1976), *cert. denied,* 430 U.S. 933, 97 S.Ct. 1556, 51 L.Ed.2d 778 (1977); *United States v. Biondo,* 483 F.2d 635, 644 (8th Cir. 1973), *cert. denied,* 415 U.S. 947, 94 S.Ct. 1468, 39 L.Ed.2d 563 (1974).

■ Hill finally argues that section 822(c)(1) is unconstitutionally vague in that the words which exempt individuals acting in the "usual course of business or employment" do not give sufficient notice at what point criminal responsibility attaches. *See, e. g., Papachristou v. City of Jacksonville,* 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972). This argument is misdirected. Hill was charged with violations of 21 U.S.C. §§ 841(a)(1) and 843(a)(3), and these statutes give sufficient notice of the criminal conduct. 21 U.S.C. § 822(c)(1) is an exemption to registration; it does not attempt to make criminal conduct lawful under any circumstances.

We are abundantly satisfied that the trial court committed no prejudicial errors; Hill's convictions are affirmed.