**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jeffrey AUGUST, Defendant–Appellant.**

**No. 91–2331.**

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 21, 1992.

Decided Dec. 23, 1992.*

---

* This decision was originally issued as an "unpublished decision" filed on December 23, 1992. On January 19, 1993, the court designated the opinion as one recommended for full-text publication.

Jonathan Tukel (argued & briefed), Office of U.S. Atty., Detroit, MI, for plaintiff-appellee.

Richard P. Zipser (argued & briefed) Hertz, Schram & Saretzky, Bloomfield Hills, MI, for defendant-appellant.

Before: JONES and SILER, Circuit Judges; and PECK, Senior Circuit Judge.

PER CURIAM.

Defendant–Appellant Dr. Jeffrey August, a doctor of podiatric medicine, appeals his conviction and sentence for possession with intent to distribute controlled substances and unlawful failure to maintain records regarding controlled substances. For the reasons stated herein, we affirm both his conviction and sentence.

I.

On January 28, 1991, a federal grand jury in Detroit, Michigan returned a four-teen-count indictment against August. Count 1 of the indictment charged that from January 1987 through June 1990, August distributed hydrocodone compound syrup ("hydrocodone") and Hycodan syrup ("Hycodan"), both Schedule III cough syrups, outside the course of professional practice and for no legitimate medical purpose, in violation of 21 U.S.C. § 841(a)(1) (1988). Counts 2 through 13 charged August with possessing, on various dates, quantities of hydrocodone and Hycodan with the intent to distribute the substances outside the course of professional practice and for no legitimate medical purpose, in violation of § 841(a)(1). Count 14 charged that from January 1987 through June 1990, August unlawfully failed to maintain records regarding his inventory of controlled substances, in violation of 21 U.S.C. §§ 827(a)(3) (1988) and 843(a)(4)(A) (1988).

August's trial commenced on July 9, 1991. The evidence at trial showed the following:

In early 1987, August began buying quantities of hydrocodone and Hycodan from Henry Schein, Inc., of Port Washington, New York. Hycodan is a DuPont product; hydrocodone is its generic name. The two products are identical chemically. The active ingredient is hydrocodone bitartrate, a narcotic. From January 1987 through March 1990, August placed more than 100 orders with Schein, making net purchases totalling ninety-nine gallons of the cough syrups. August's costs in buying the syrups from Schein were approximately $8 per pint for hydrocodone and $30–$35 per pint for Hycodan. The drugs sell for $80–$190 per pint on the illegal market.

In May 1990, diversion investigators of the United States Drug Enforcement Administration ("DEA") began looking into August's purchases of the cough syrup. Diversion investigators monitor purchases of controlled substances by doctors, pharmacists, and others who are licensed to dispense controlled substances for legitimate medical purposes, to ensure that licit pharmaceuticals are not diverted to the illegal market. The investigators found that August's total purchases were double those of the average United States pharmacy; fifty-five times larger than the purchases of the average U.S. physician in 1987; seventy-six times larger than the purchases of the average doctor in 1988; and seventy-one times greater than those of the average doctor in 1989. His purchases of hydrocodone were four times as great as those of the average U.S. hospital. August purchased ninety-nine percent or more of all the hydrocodone sold to podiatrists in Michigan in each of the years 1987 through 1989.

After they secured copies of August's purchasing records from Schein, diversion investigators went to August's office in Belleville, Michigan on several occasions. On three occasions—May 22, May 23, and May 29, 1990—investigators went to his office in order to inspect his controlled substance records; however, August was unable to produce records on any of those occasions. On those occasions, August stated to DEA investigators that he had dispensed the cough syrups to patients in the course of his podiatric practice, and that the patient records would account for the disposition of the drugs. August stated that none of the cough syrup was in the office. August personally handled all of his practice's drug purchases. He opened

all of the packages from Henry Schein, Inc., and maintained the drug inventory. On June 1, 1990, DEA agents executed a search warrant of August's office; however, no cough syrups or records relating to the controlled substances were found. DEA investigators seized all of August's patient files, approximately 1100 in all.

In late 1988, prior to the DEA's commencement of its investigation, the Michigan Department of Licensing began its own administrative investigation of August's purchases of the cough syrup. On February 1, 1989, the Department of Licensing executed an administrative search warrant of August's office. Pursuant to the warrant, the Department of Licensing seized approximately eight pints of hydrocodone and Hycodan. August had repackaged the cough syrups into thirty-three small plastic bottles. August had individually labelled the bottles "Hydrocodone" or "Hycodan" and had placed them in a box on which he had written "Nectar of the Gods: Hydros and Hycos." DEA diversion investigator Katherine Chaney was of the opinion, based on her experience, that the cough syrup in the bottles was packaged for distribution on the illegal market.

Prior to his trial, August testified at an administrative hearing before the Michigan Department of Licensing. At that hearing, August testified that ninety percent of the drugs had been administered to his patients and that he merely forgot to note in the patient files that he had so dispensed it. The patient records which the DEA seized on June 1, 1990 indicated that August had given hydrocodone to seven of his 1100 patients, accounting for approximately one-half pint of cough syrup. August personally maintained all of the patient files, and wrote all of the notations about how the cough syrup had been dispensed. Five of the patients to whom he supposedly had dispensed cough syrup testified at trial that they never received the drug from him.

At trial, August's defense was not that he had lawfully dispensed the drugs to his patients, but rather that he had been addicted to the drugs and had consumed them himself.

August had two witnesses testify as part of his case. Dr. Richard Rech, a pharmacologist, testified that it is possible for a person to consume ninety-nine gallons of hydrocodone over a three and one-half year period. August also called Dr. Michael Abramsky, a PhD in psychology, as an expert witness. Dr. Abramsky testified that, in his opinion, August had been a drug addict from late 1986 or early 1987 until early 1990, coinciding with the time period of the indictment. Dr. Abramsky examined August for the first time in early 1991, after he had been indicted, and after his alleged drug abuse problem had ended.

At trial, the government presented testimony which contradicted the conclusions of August's witnesses. Dr. Eugene Schoener, a pharmacologist, and Dr. Robert Forney, a pharmacologist and toxicologist, disputed Dr. Rech's testimony that August could have consumed ninety-nine gallons of the cough syrup. Both men stated that August would have suffered tremendous side effects, including blurred vision, mental clouding, inability to perform normal tasks or to carry on his podiatric practice, and possibly death. Several witnesses contradicted Dr. Abramsky's conclusion that August had been addicted to the cough syrup. August's former receptionist, Mary McGlory, testified that August never appeared to be under the influence of drugs, was not sluggish, continued to perform surgery, did not unexpectedly cancel patient surgeries, and did not have trouble driving. None of the five patients who testified at trial experienced any problems as a result of August having performed surgery on them, and a number thought he was a very skillful doctor.

During jury deliberations, the jury sent two notes to the judge. The jury sent out its first note at 4:45 p.m. on July 22, 1991. That note stated that the jury had reached agreement as to Counts 1 and 14, but could not reach agreement on Counts 2 through 13. At that point, the jury was sent home for the day and the district court called for a conference the next morning with counsel

for both parties. The jurors resumed their deliberations at 9:00 a.m. the next morning. At that point, the jurors asked, through a second note, to be reinstructed on the definitions of reasonable doubt and intent. The district judge then held a conference in his chambers with counsel for both parties and discussed both notes, following which he gave supplemental instructions, a course of action which was agreed to by both parties.

On July 23, 1991, the jury found August guilty of Counts 2 through 14, but not guilty of Count 1. On November 26, 1991, August was sentenced. Because Counts 2 through 4 involve crimes which were committed prior to November 1, 1987, they were not governed by the United States Sentencing Commission's *Guidelines Manual* [hereinafter U.S.S.G.]. *See United States v. Benskin*, 926 F.2d 562, 564 (6th Cir.1991). The district court sentenced August to a forty-nine month term of imprisonment on Counts 5 through 13, and to a forty-eight month consecutive term of imprisonment on Count 14, for a total of ninety-seven months of imprisonment on the post-guideline counts. The district court imposed a forty-nine month concurrent sentence as to the pre-guideline counts. August then filed this appeal.

## II.

August first argues that he received ineffective assistance of counsel at various stages of his trial and sentencing. First, he alleges that his trial attorney failed to present evidence at sentencing that August consumed some of the cough syrup that he was found guilty of possessing with the intent to distribute. The district court found that August intended to distribute the entire ninety-nine gallons of cough syrup which he had purchased. August claims that, had his trial attorney presented evidence that August used some of the drug, the district court may have found that August was responsible for possessing with the intent to unlawfully distribute less than the full ninety-nine gallons. Second, August contends that his trial attorney conceded to the jury that the defendant

was guilty of Count 14 and because of that concession, August was provided ineffective assistance of counsel. Third, August alleges that his trial attorney rendered ineffective assistance of counsel through his actions in response to the notes the jury submitted to the court.

In *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), the Supreme Court established a two-prong test for determining whether counsel's representation of a criminal defendant is so deficient as to render the trial and/or sentencing unfair and the result unreliable. Under the *Strickland* test:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant a fair trial; a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or ... sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Blackburn v. Foltz*, 828 F.2d 1177, 1180 (6th Cir.1987) (quoting *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064), *cert. denied*, 485 U.S. 970, 108 S.Ct. 1247, 99 L.Ed.2d 445 (1988). Under the test, a reviewing court's analysis of counsel's performance must be highly deferential, and must presume that counsel's advocacy fell within the wide range of reasonable professional assistance. *Id.* "In evaluating counsel's performance the court should also 'keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case.'" *Id.* (quoting *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066). In addition, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066.

"As a general rule, a defendant may not raise ineffective assistance of counsel claims for the first time on direct appeal, since there has not been an opportunity to develop and include in the record evidence bearing on the merits of the allegations." *United States v. Wunder*, 919 F.2d 34, 37 (6th Cir.1990). "The customary procedure followed in this situation by the various circuits is to permit the defendant to raise his ineffectiveness of counsel claim in a proper post-conviction proceeding under 28 U.S.C. § 2255. When, however, the record is adequate to assess the merits of the defendant's allegations, some courts will consider them." *Id.*

■ Because the components involved in determining ineffective assistance of counsel are mixed questions of law and fact, they are open to review by the appellate court. *Blackburn*, 828 F.2d at 1181; *Meeks v. Bergen*, 749 F.2d 322, 327 (6th Cir.1984).

■ August argues that the record is adequate to assess the merits of his allegations. We disagree. To support his first allegation, August points to his motion for a new trial which states that trial counsel interviewed persons who knew August and would testify that August consumed at least some of the cough syrup. Neither August's motion nor the record on appeal includes even so much as an affidavit from any of the putative witnesses, however. Furthermore, there could be any number of reasons (including strategic ones) his trial counsel did not call witnesses at the sentencing hearing. The record is simply inadequate to make any judgment in this regard.

■ Similarly, August's claim that his trial counsel's alleged concession of guilt as to Count 14 deprived him of effective counsel requires a thorough review of the circumstances surrounding the attorney's decision to concede guilt. As the record is presently formulated, there is no indication whether August wanted his counsel to make such a concession or whether August and his counsel discussed such a strategic ploy.

■ Finally, August's claim that his trial attorney rendered ineffective assistance of counsel through his actions in response to the notes from the jury to the judge during their deliberations is not properly before this Court because there is no record to show why counsel proceeded as he did.

Without the record being adequately developed, the merits of August's ineffective assistance of counsel argument are not reviewed.

### III.

August next argues that the verdict was not unanimous. To support this argument, he notes that the recording device used by the court reporter did not pick up Juror Paula Roland's response to the clerk's polling of the jury.

While there is no response recorded for Juror Roland, the district court did make it clear that Juror Roland did in fact concur in the verdict when it stated: "[A]ll right. The—the verdicts are unanimous." J.A. at 703. Defense counsel made no objection to the district court's statement that the verdicts were unanimous.

■ The purpose of polling the jury is to enable the court and parties to ascertain, with certainty, that each of the jurors approves of the verdict as returned. *United States v. Love*, 597 F.2d 81, 84 (6th Cir. 1979). Furthermore, this court reviews for plain error when a jury is polled and the defendant does not object to the result of the polling. *Id.;* Fed.R.Crim.P. 52(b).

The polling of the jury in the instant case effectuated its full purpose—after having heard the jurors' responses to the polling, the district court stated, without objection, that the verdicts were unanimous. The court and parties ascertained for a certainty that each juror concurred in the verdict. The polling of the jury thus provides no basis for reversal of the convictions.

### IV.

August next argues that the district court improperly deprived him of the oppor-

tunity to respond to the notes the court received from the jury.

■ The district court's actions in responding to questions from the jury are reviewed for abuse of discretion. *United States v. Nunez,* 889 F.2d 1564, 1568–69 (6th Cir.1989).

As noted in the record, counsel did participate in the July 23, 1991 conference in chambers, and agreed with the district court's handling of the notes. *See* J.A. at 3, 5. As there is nothing in the record to indicate that the district court abused its discretion in its handling of the notes, this argument is rejected.

## V.

August next argues that the district court erred by precluding August's expert witness, Dr. Abramsky, from repeating statements August and his ex-wife made to the expert.

■ We need not decide whether the district court erred in excluding this evidence because we find that if there was error, it was harmless beyond a reasonable doubt. *See United States v. Gibson,* 675 F.2d 825, 833–35 (6th Cir.), *cert. denied,* 459 U.S. 972, 103 S.Ct. 305, 74 L.Ed.2d 285 (1982) (erroneous exclusion of evidence deemed harmless error beyond a reasonable doubt—conviction upheld). Notwithstanding the district court's ruling, Dr. Abramsky recounted information about August, which could only have come from interviews with August, and which was not testified to by any other witness at trial. Thus, the defense was able to get the substance of August's statements to Dr. Abramsky before the jury. Therefore, the district court's ruling could not have undermined the jury's ability to determine the issue of whether or not August had been addicted to the drugs. *See United States v. Hatchett,* 918 F.2d 631, 638 (6th Cir. 1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2839, 115 L.Ed.2d 1008 (1991).

## VI.

August next argues that the evidence was not sufficient to support his convictions on the charges of possession with the intent to distribute controlled substances.

The relevant inquiry on this issue is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original).

■ Under § 841(a)(1), the essential elements the government was required to prove are that August knowingly possessed drugs with the intent to distribute them. *United States v. Christian,* 786 F.2d 203, 210 (6th Cir.1986). An exception exists for physicians who distribute or dispense drugs in the normal course of their professional practice. *United States v. Hughes,* 895 F.2d 1135, 1143 n. 11 (6th Cir.1990) (citing *United States v. Moore,* 423 U.S. 122, 122–140, 96 S.Ct. 335, 336–344, 46 L.Ed.2d 333 (1975)); *United States v. Kirk,* 584 F.2d 773, 784 (6th Cir.), *cert. denied,* 439 U.S. 1048, 99 S.Ct. 726, 58 L.Ed.2d 708 (1978). Therefore, because August is a doctor, the government needed to prove, in addition, that the distribution occurred outside the usual course of professional practice and for no legitimate medical purpose. *United States v. Seelig,* 622 F.2d 207, 212–13 (6th Cir.), *cert. denied,* 449 U.S. 869, 101 S.Ct. 206, 66 L.Ed.2d 89 (1980); *see also United States v. Varma,* 691 F.2d 460, 462 (10th Cir. 1982); *Kirk,* 584 F.2d at 784–86.

■ The evidence established that August purchased ninety-nine gallons of Schedule III cough syrups. Furthermore, the evidence showed that he was caught with a certain quantity of the drugs by the Michigan Department of Licensing. There is substantial evidence as to August's knowing possession.

■ This court has held that a defendant's mere possession of four gallons of codeine cough syrup is a large enough quantity to permit a jury to reasonably infer that he "intended to distribute at least a portion of it." *United States v. Dimitroff,* 541 F.2d 629, 632 (6th Cir.1976). August possessed approximately twenty-

five times the amount of cough syrup held to be sufficient to permit a jury to infer that the defendant intended to distribute the drugs in *Dimitroff*. There is sufficient evidence as to the intent to distribute element.

■ There are no specific guidelines concerning what is required to support a conclusion that an accused acted outside the usual course of professional practice. *See Kirk*, 584 F.2d at 784. Rather, the courts must engage in a case-by-case analysis of evidence to determine whether a reasonable inference of guilt may be drawn from specific facts. *Id.*

■ Turning to the facts of this case, we find that there is adequate evidence to support the conclusion that August possessed with the intent to distribute the drugs outside his professional practice and for no legitimate medical purpose. First, August had repackaged some of the cough syrup into little containers labelled "Hydrocodone" and "Hycodan" and had placed them in a box labelled "Nectar of the Gods: Hydros and Hycos." A DEA investigator testified that, based on her experience, the cough syrup in the bottles was packaged for distribution in the illegal market. The jury is entitled to infer an intent to distribute the drugs based on the way they are packaged. *See United States v. Dotson*, 871 F.2d 1318, 1323 (6th Cir.1989) ("a jury reasonably may infer intent to distribute drugs from the manner in which the drugs are packaged"), *vacated in part on other grounds*, 895 F.2d 263 (6th Cir.), *cert. denied*, 498 U.S. 831, 111 S.Ct. 94, 112 L.Ed.2d 66 (1990). Second, there was testimony that the cough syrups have no legitimate medical use in the practice of podiatry; however, August bought virtually all of the cough syrups sold to podiatrists in Michigan for three straight years. In addition, his purchases were much greater than the purchases of the average doctor, pharmacy or hospital. The jury may infer an intent to distribute from this evidence. *Cf. Kirk*, 584 F.2d at 773–74; *United States v. Ellzey*, 527 F.2d 1306, 1307 (6th Cir.1976). Third, August's records indicate that only a miniscule portion of the controlled sub-

stances were given to patients and duly noted. In light of the other evidence, the jury was entitled to infer that the disappearance of the vast bulk of the drugs without explanation meant that August had diverted it to the illegal market.

We find no merit in this claim.

## VII.

August next raises a myriad of claims relating to his sentence.

### A.

■ First, August argues that acquitted conduct should not be considered under U.S.S.G. § 3B1.1. This court has held that acquitted conduct can be used. *See United States v. Moreno*, 933 F.2d 362, 374 (6th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 265, 116 L.Ed.2d 218 (1991). Therefore, this claim is without merit.

### B.

August next argues that the district court did not correctly apply the right standard at sentencing and that the preponderance of the evidence standard is too low a standard at sentencing in regards to August's convictions for possession with the intent to distribute the cough syrup.

■ A district court's factual findings as to the quantity of drugs for which a defendant is responsible is reviewed under a clearly erroneous standard. *Id.*

■ The district court found, by a preponderance of the evidence but not beyond a reasonable doubt, that all of the cough syrup was possessed by August with the intent to distribute it. *See United States v. August*, 778 F.Supp. 931, 932 (E.D.Mich. 1991). In so finding, the district court rejected August's claim that he had used the drug himself for an alleged addiction. The court noted that there was little evidence of an addiction. Therefore, the district court applied the preponderance of the evidence standard at sentencing correctly.

■ As to August's claim that the preponderance of the evidence is too low a

standard, this circuit has held numerous times that the preponderance of the evidence standard is the correct and appropriate standard for sentencing under the guidelines. *See United States v. Castro,* 908 F.2d 85, 90 (6th Cir.1990). *But see United States v. Kikumura,* 918 F.2d 1084, 1101 (3d Cir.1990) (clear and convincing evidence should be used where the sentence imposed is dramatically higher than that prescribed by the guidelines for the underlying offense).

### C.

■ August next argues that the guideline relating to the equivalency of hydrocodone as compared to other drugs is irrational, and therefore violates due process. *See* U.S.S.G. § 2D1.1, comment. (drug equivalency tables) (Nov.1990) (1 ml. of hydrocodone cough syrup equivalent to 1 mg. of heroin or 1 g. of marijuana). For the reasons stated in the district court opinion, we conclude that the decisions regarding equivalency were reached on informed bases, the reasons given are rational, and the equivalency tables are constitutional. *See August,* 778 F.Supp. at 933–35.

### D.

■ August next claims that the district court held an improper sentencing hearing. He does not state clearly what was wrong with the hearing, however. August seems to argue that the district court should have issued tentative findings before the hearing. That argument has been rejected by this court. In *United States v. Anders,* 899 F.2d 570, 577 (6th Cir.), *cert. denied,* 498 U.S. 990, 111 S.Ct. 532, 112 L.Ed.2d 543 (1990), this court stated that the guidelines do not provide that a sentencing court must state its final sentencing decision before hearing counsel's arguments on disputed factors in the presentence report.

### E.

■ August next argues that the district court erred by adding two points to his offense level for obstruction, pursuant to U.S.S.G. § 3C1.1. A district court's ruling that a defendant obstructed justice is a finding of fact which will be disturbed on appeal only if clearly erroneous. *United States v. Alvarez,* 927 F.2d 300, 303 (6th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 2246, 114 L.Ed.2d 487 (1991).

■ The evidence is clear that August obstructed justice. After the DEA had begun its investigation of him, August made a series of false statements to investigating agents. August falsified records. In addition, August lied to the Michigan Department of Licensing by testifying that he had administered ninety percent of the drugs to his patients. The district court's decision is not clearly erroneous.

### VIII.

Defendant next argues that there was prosecutorial misconduct which requires that his sentence be reversed. The prosecutor, in his closing argument to the jury, made comments to the effect that August's lawyer was trying to trick the jury in a couple of ways: 1) by getting mad at one of the government's experts during the trial; and 2) by conceding August's guilt to Count 14 so that it would find August not guilty on the other charges. August did not object to the comments at trial.

■ Because August did not object to the arguments, August waived any objection to the remarks on appeal unless the remarks constituted plain error or a defect affecting substantial rights. *See United States v. Meyers,* 952 F.2d 914, 917 (6th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 1695, 118 L.Ed.2d 407 (1992); *see also United States v. Young,* 470 U.S. 1, 16, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985). "[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial." *Young,* 470 U.S. at 11, 105 S.Ct. at 1044. "In order to decide if the prosecutor's remarks denied the defendant a fair trial, a reviewing court may consider, along with other factors, the po-

tential of the remarks to prejudice the defendant or confuse the jury and the strength of the proof against the defendant." *United States v. Castro,* 908 F.2d 85, 89 (6th Cir.1990).

■ A prosecutor commenting that the defense is attempting to trick the jury is a permissible means of arguing so long as those comments are not overly excessive or do not impair the search for the truth. *See Lindgren v. Lane,* 925 F.2d 198, 204 (7th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 105, 116 L.Ed.2d 74 (1991). We find that the comments in this case, when viewed in context, do not rise to the level of prosecutorial misconduct.

Furthermore, the evidence of August's guilt was very strong. *See* Section VI, *supra.* Therefore, this claim is without merit.

### IX.

For the reasons stated, we affirm August's conviction and sentence.[1]

---

1. After carefully considering August's other challenges to his conviction and sentence, we also reject those challenges.