85 F.3d 630
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Natasha Halina WINNICKI, Defendant-Appellant.
 Nos. 95-1374, 95-1375.
 United States Court of Appeals, Sixth Circuit.
 May 15, 1996.
 
 Before: SUHRHEINRICH and SILER, Circuit Judges; ALDRICH, District Judge.*
 SILER, Circuit Judge.
 
 
 1
 Defendant, Natasha Halina Winnicki, appeals her sentence pursuant to a guilty plea to theft of Social Security funds in violation of 18 U.S.C. § 641 and deceiving the Departments of Agriculture and Health & Human Services in various applications for receipt of benefits in violation of 18 U.S.C. § 1001. Winnicki contends that she was denied effective assistance of counsel at sentencing. For the reasons stated herein, we affirm Winnicki's sentence.
 
 I.
 
 2
 Winnicki pled guilty to the theft and conversion to her own use of government funds in the form of Social Security benefits intended for her deceased husband and received and used by her over a period of nine months following his death. She also pled guilty to submitting a Statement of Need form for the purpose of applying for retroactive Medicaid entitlement in which she falsely declared that she had received no Social Security benefits in May 1992, when, in fact, on May 13, 1992, she had received, endorsed, and negotiated a check for Social Security Disabled Widows Benefits in the amount of $9,404.00.
 
 
 3
 Winnicki was sentenced to 18 months incarceration concurrent, three years supervised release concurrent, restitution of $7,721.23, and a special assessment of $100.00.
 
 II.
 
 4
 Winnicki argues that her counsel provided ineffective assistance by failing to seek a two-level reduction under USSG § 3E1.1 for acceptance of responsibility. She also argues her counsel was ineffective when she failed to obtain a downward departure under USSG § 5H1.4 for extraordinary impairment.
 
 
 5
 When claiming ineffective assistance the defendant must first show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. United States v. August, 984 F.2d 705, 710 (6th Cir.1992), cert. denied, 145 S.Ct. 158 (1993) (quotation omitted). Next, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Sullivan v. United States, 11 F.3d 573, 576 (6th Cir.1993) (citations omitted).
 
 
 6
 "[A] reviewing court's analysis of counsel's performance must be highly deferential, and must presume that counsel's advocacy fell within the wide range of reasonable professional assistance." August, 984 F.2d at 710 (citations omitted). Counsel's conduct must be evaluated from counsel's perspective at the time the conduct occurred. Taylor v. United States, 985 F.2d 844, 846 (6th Cir.1993). Further, the reviewing court should consider any claimed errors within the context of counsel's overall performance and in light of all the facts in the record. Blackburn v. Foltz, 828 F.2d 1177, 1184 (6th Cir.1987), cert. denied, 485 U.S. 970 (1988). "Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Strickland v. Washington, 466 U.S. 668, 690 (1984).
 
 
 7
 Normally, a challenge to defense counsel's performance may not be raised for the first time on direct appeal, as "there has not been an opportunity to develop and include in the record evidence bearing on the merits of the allegations." August, 984 F.2d at 711 (citation omitted). However, the court may review such a claim on direct appeal if, "the record is adequate to assess the merits of the defendant's allegations[.]" Id. (citation omitted). Here, the record is sufficient to assess the merits of Winnicki's allegations.
 
 A. Acceptance of Responsibility:
 
 8
 Winnicki first contends that her counsel at sentencing erred when she acknowledged that, under her interpretation of § 3E1.1, Winnicki was ineligible for a reduction for acceptance of responsibility.
 
 
 9
 Sentencing counsel filed a written response to the Presentence Investigation Report (PSR) in which she asserted that a reduction for acceptance of responsibility was warranted. Prior to sentencing she filed a sentencing memorandum in which she also argued for this reduction. However, at the sentencing hearing, Winnicki's counsel withdrew several objections to the PSR "in light of additional research." While asserting that Winnicki felt she had accepted responsibility, sentencing counsel acknowledged that she did not believe Winnicki fell under the Guidelines criteria which would allow the reduction.
 
 
 10
 The record shows that while Winnicki acknowledged she did not notify the Social Security Administration of her husband's death or subsequent receipt of his benefits, she tried to mitigate that fact by assigning responsibility to the funeral home. Winnicki claimed she thought the funeral home had notified the Social Security Administration. She also denied any recollection of the May 1992 payment of $9,404.00 when completing the October 1992 Statement of Need form. As Winnicki had cashed at least 150 checks using improperly received government funds, the court agreed with the probation officer that her attempt to blame the funeral home and her purported failing memory disqualified her from receiving a reduction for acceptance of responsibility.
 
 
 11
 "[E]ffort[s] to minimize one's culpability is not consistent with an acceptance of responsibility." United States v. Paulk, 16 F.3d 1222, 1994 WL 32674, * * 2 (6th Cir.1994) (unpublished) (citation omitted). Thus, sentencing counsel was correct, Winnicki was not entitled to the reduction.
 
 
 12
 The record also shows that even if sentencing counsel had not withdrawn her objection and argued for the reduction, the court would have denied it. The court's comments at sentencing leave little doubt that despite what sentencing counsel may have said, the court found Winnicki's actions and attitude both before the court and prior to sentencing prohibited its consideration of any type of reduction for acceptance of responsibility. See Isabel v. United States, 980 F.2d 60 (1st Cir.1992) (holding that when faced with little likelihood of success in challenging an issue, defense counsel may reasonably decide to concede on that issue and seek downward departure on other grounds); Barrett v. United States, 965 F.2d 1184, 1193 & n. 18 (1st Cir.1992) (holding there was no "deficient professional performance in the constitutional sense unless the challenged decisions were not 'plausible options.' ").
 
 
 13
 Winnicki has failed to show sentencing counsel's conduct was constitutionally deficient. Further, even assuming arguendo that counsel's performance was constitutionally deficient, there was no prejudice as any arguments for allowing the reduction would have been rejected by the court.
 
 
 14
 B. Downward departure under § 5H1.3 for extraordinary physical impairment:
 
 
 15
 Winnicki argues that sentencing counsel failed to properly develop the extent of her medical problems for sentencing so the court could have considered whether they were severe enough to warrant a downward departure pursuant to USSG § 5H1.4.[1] This argument is without merit.
 
 
 16
 Sentencing counsel did discuss Winnicki's health problems in her objections to the PSR and sentencing memorandum. The court specifically stated that it had read and was familiar with those documents. During her oral presentation to the court at sentencing, counsel sought a downward departure based on both Winnicki's health problems and those family-related problems involving the care of her granddaughter. Admittedly, the emphasis was on the care of Winnicki's granddaughter. However, this was obviously a wise tactical decision as it would have been contradictory to argue Winnicki was too seriously infirm to go to jail, but well enough to be the primary custodian of her ten-year-old granddaughter.
 
 
 17
 Even if Winnicki's medical problems had been argued more extensively, Winnicki was not entitled to this departure. Her health problems include high blood pressure, nervous problems, arthritis, gastritis, depression and hormone therapy. She has also had surgery on her wrist. These problems are not sufficient to warrant departure under § 5H1.4. See United States v. Martinez-Guerrero, 987 F.2d 618 (9th Cir.1993) (affirming a denial of a downward departure pursuant to § 5H1.4 for a defendant who was legally blind); United States v. Guajardo, 950 F.2d 203 (5th Cir.1991), cert. denied, 503 U.S. 1009 (1992), (affirming denial of a downward departure pursuant to § 5H1.4 for a defendant who was suffering from cancer, high blood pressure, a fused right ankle and an amputated leg).
 
 
 18
 Winnicki failed to show sentencing counsel's conduct was constitutionally deficient. Further, Winnicki was not entitled to the reduction, so there was no prejudice.
 
 
 19
 AFFIRMED.
 
 
 
 *
 The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation
 
 
 [1]
 Section 5H1.4 provides in pertinent part:
 Physical condition or appearance, including physique, is not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range. However, an extraordinary physical impairment may be a reason to impose a sentence below the applicable guideline range; e.g., in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment.