**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 04-4314**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

OLEN TYRONE SMITH,

Defendant - Appellant.

---

Appeal from the United States District Court for the District of Maryland, at Baltimore. William D. Quarles, Jr., District Judge. (CR-03-210-WDQ)

---

Submitted: May 25, 2005                    Decided: July 13, 2005

---

Before NIEMEYER, MOTZ, and GREGORY, Circuit Judges.

---

Affirmed in part, vacated in part, and remanded by unpublished per curiam opinion.

---

Francis A. Pommett, III, LAW OFFICE OF NATHANSON & POMMETT, P.C., Baltimore, Maryland, for Appellant. Allen F. Loucks, United States Attorney, George L. Russell, III, Assistant United States Attorney, Baltimore, Maryland, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Following a jury trial, Olen Tyrone Smith was convicted of possession with intent to distribute phentermine, in violation of 21 U.S.C. § 841(a)(1) (2000), and interference with commerce by threats or violence, in violation of 18 U.S.C. § 1951(a) (2000). The district court sentenced Smith under the federal sentencing guidelines to 36 months incarceration on the § 841(a) conviction and a concurrent 71 months in prison for the § 1951(a) offense. The court also ordered Smith to pay restitution in the amount of $33,500. On appeal, Smith asserts that the district court erred by refusing to give his requested jury instructions and also erred in determining his sentence. For the reasons that follow, we affirm Smith's convictions, but vacate and remand for resentencing.

Smith was employed by Doctor Robert Keenan, who owned the Elite Weight Management Center in Towson, Maryland. As part of weight loss programs, physicians prescribe phentermine, a mild form of amphetamine, to their patients as an appetite suppressant. Dr. Keenan was registered with the Attorney General's Office and the Drug Enforcement Administration under 21 U.S.C. § 822 (2000), and authorized to possess and prescribe phentermine, which is a Schedule IV controlled substance.

Dr. Keenan owned an encapsulating machine, which was used to create phentermine gelatin capsules from bulk phentermine. As part of his job, Smith would take bulk phentermine from

Dr. Keenan's office in Towson to Alpha Bio-Science Center in Baltimore City, where the encapsulating machine was kept. There, Smith would encapsulate the phentermine with the assistance of Robin Williams, the manager of Alpha Bio-Science.

At some point, Smith began to encapsulate phentermine for another doctor, Dr. Strowhouer, using Dr. Keenan's machine without his authorization. Dr. Ladden, an employee of Dr. Strowhouer, traveled from Media, Pennsylvania, to Baltimore City with bulk phentermine to be encapsulated. Smith performed the encapsulation of phentermine for Dr. Strowhouer on five occasions.

Dr. Keenan discovered that Smith was using his machine to encapsulate phentermine for Dr. Strowhouer without his consent and confronted Smith. As retaliation, Dr. Keenan instructed Smith to "get their next batch."

On December 19, 2002, Dr. Ladden brought five kilograms of bulk phentermine to Alpha Bio-Science to be manufactured into capsules. Smith performed the encapsulation and Dr. Ladden bottled the resulting 167,000 phentermine capsules into labeled bottles. He placed the bottles into cardboard boxes.

Smith and his cousin picked up the boxes and carried them outside to the parking lot. Dr. Ladden testified that he believed that Smith was taking the phentermine to Dr. Ladden's car. Instead, Smith and his cousin placed the boxes in Smith's vehicle.

Williams yelled to Smith, telling him, "that's not where

- 3 -

they go." Smith responded with a demand for more money. Williams put his hands on Smith to stop him, and Smith pushed him with a box back though the doorway and into some steel drums.

Dr. Ladden testified that Smith's cousin was standing near Smith's car and had his hand in his coat pocket as if he had a gun. Once the boxes were loaded, Smith's cousin left Alpha Bio-Science and took the pills to Smith's house, where they remained in Smith's car until the next day when Smith delivered them to Dr. Keenan. Dr. Keenan paid Smith $5000 for the capsules.

Smith contends that the district court erred in its instructions to the jury as to the exception in 21 U.S.C. § 822(c), for possession of a controlled substance in the course of employment by an employee of a person authorized and registered to possess such substance. He also asserts that the court erred in refusing to instruct the jury as to a required nexus between the use of force or violence or threat of injury and the taking of property under § 1951. This court's review of jury instructions is for an abuse of discretion. United States v. Patterson, 150 F.3d 382, 387-88 (4th Cir. 1998); United States v. Brooks, 928 F.2d 1403, 1408 (4th Cir. 1991). The district court's instructions will be upheld "provided the instructions, taken as a whole, adequately state the controlling law." Teague v. Bakker, 35 F.3d 978, 985 (4th Cir. 1994).

Section 822 requires persons who manufacture, distribute, or dispense any controlled substance to obtain a registration and authorization from the Attorney General. 21 U.S.C. § 822(a), (b). An exception to the registration requirements provides that "[a]n agent or employee of any registered manufacturer, distributor, or dispenser of any controlled substance [may lawfully possess a controlled substance] if such agent or employee is acting in the usual course of his business or employment." 21 U.S.C. § 822(c).

The instruction given by the court explained this exception and summarized:

> If you find that Mr. Smith, one, was an agent or employee of a person registered under the act at the time of his possession, and, two, that he was acting in the course of his employment for that registered person, and, three, that his conduct was in furtherance of the usual course of the registrant's lawful professional practice, then you must find the defendant not guilty of count one of the indictment.

Smith contends that the court erred in adding the third requirement—that the conduct needed to be "in furtherance of the usual course of the registrant's lawful professional practice" in order for the jury to find that Smith's possession of the phentermine was lawful under § 822. He argues that his theory of defense was that he was employed by Dr. Keenan and acting pursuant to his instructions when he took the phentermine capsules from Dr. Strowhouer. He asserts that he was therefore lawfully in possession of the controlled substance and cannot be convicted of

- 5 -

possession with intent to distribute under 21 U.S.C. § 841(a). <u>See</u> 21 U.S.C. § 822(c).

By adding the requirement that Smith's "conduct was in furtherance of the usual course of the registrant's lawful professional practice" in order that the jury find him not guilty, Smith contends that the court misstated the law and allowed the jury to convict him even if he did not know that Dr. Keenan's instructions and directions were unlawful and even if he believed that he was acting "in the usual course of his business or employment." <u>See</u> <u>United States v. Lewis</u>, 53 F.3d 29, 32 (4th Cir. 1995).

To qualify under the employee or agent exception to registration under § 822, the person must be employed in the "legitimate distribution chain" of the controlled substance. <u>See</u> <u>United States v. Pruitt</u>, 487 F.2d 1241, 1244 (8th Cir. 1973). Any possession or distribution outside of the legitimate distribution chain is unlawful. <u>United States v. Vamos</u>, 797 F.2d 1146, 1151-52 (2d Cir. 1986). Thus, if the possession is not in the "usual course of the registrant's lawful professional practice," then it is not in the legitimate chain of possession and therefore not within the § 822(c) exception. <u>See</u> <u>United States v. Hill</u>, 589 F.2d 1344, 1350 (8th Cir. 1979) (holding that mere fact that defendant was employee of company registered to possess and distribute

- 6 -

controlled substances does not make otherwise unlawful conduct lawful).

Here, Smith was directed by his employer to take the phentermine capsules from Dr. Strowhouer without his consent. This taking resulted in Smith's possession of the phentermine outside the legitimate chain of distribution. We find that the district court's instructions, "taken as a whole, adequately state the controlling law." Teague, 35 F.3d at 985. Thus, the court's inclusion of the requirement that the conduct be "in furtherance of the usual course of the registrant's lawful professional practice" does not amount to an abuse of discretion. Id.

Smith also challenges the court's refusal to instruct the jury as to a nexus requirement between the taking of the property and the threat or use of force under 18 U.S.C. § 1951(a). Smith requested that the court include this instruction:

> There must be a nexus between the taking of the property and the threat or use of force. The use or threat of force subsequent to the taking of the goods does not constitute robbery.

In proposing this instruction, Smith cited United States v. Smith, 156 F.3d 1046, 1056 (10th Cir. 1998), in which the Tenth Circuit held that a threat or force or injury that occurred in the escape, rather than during the taking of the property, was insufficient to show that the taking was accomplished by means of force or threats. Id. at 1056.

The court did not give this instruction, but instructed the jury that "[r]obbery is the unlawful taking or obtaining of personal property of another against his will by means of actual or threatened force, violence, or fear of injury immediately or in the future to person or property." The court also explained that the taking of the property must be "by means of actual or threatened force, violence, or fear of injury." The court added, "[a]s I have instructed you, you must determine whether the defendant knowingly and willfully threatened to use force, violence or fear to unlawfully obtain the property."

Smith asserts that any force or injury that occurred in this case occurred in the escape, rather than during the taking of the property, and thus the evidence was insufficient to show that the taking was accomplished by means of force or violence. See Smith, 156 F.3d at 1056. We find that the court's instructions, as a whole, adequately stated the controlling law. See Teague, 35 F.3d at 985. Smith's contention that the jury could have found that he pushed Williams after the taking of the property, is belied by Smith's own testimony. Notably, Smith testified that he pushed Williams while he was in the act of placing the boxes of phentermine capsules in his vehicle:

> I loaded the other two [boxes] into the truck. As I was putting them down, Robin Williams grabbed me on my shoulder.

Q. And what, if anything, did you then do?

- 8 -

A.   I told Robin to get his hands off of me and that if I have got to - - If I have to turn around, it's going to be problems.

Robin Williams still grabbed my shoulder and said, "No.  What are you doing.  You can't do this."  And then, from there, I proceeded to turn around, and I shoved him.

Additionally, Smith admits, in his appeal brief, that  he "pushed [Williams] with a box back through the doorway into some steel drums."  (Appellant's Br. at 6).  In light of these admissions, we conclude that the requested instruction was not required by the evidence.  Thus, we find that the district court's refusal to give Smith's nexus instruction was not an abuse of discretion.  See Teague, 35 F.3d at 985.  Accordingly, we affirm Smith's convictions.

Citing United States v. Booker, 125 S. Ct. 738 (2005), Smith argues for the first time on appeal that his sentence is unconstitutional because it was based on facts that were neither charged in the indictment nor found by the jury beyond a reasonable doubt.  In Booker, the Supreme Court held that the federal sentencing guidelines' mandatory scheme—which provides for sentencing enhancements based on facts found by the court—violated the Sixth Amendment.  Id. at 746 (Stevens, J., opinion of the Court).  The Court remedied the constitutional violation by making the guidelines advisory through the removal of two statutory provisions that had rendered them mandatory.  Id. at 746 (Stevens,

J., opinion of the court); id. at 756-57 (Breyer, J., opinion of the Court). In United States v. Hughes, 401 F.3d 540 (4th Cir. 2005), this court held that a sentence enhanced based on facts found by the court, rather than upon facts found by the jury or admitted by the defendant, constitutes plain error that affects the defendant's substantial rights and warrants reversal. Id. at 547-48 (citing United States v. Olano, 507 U.S. 725, 731-32 (1993)).

In light of Booker and Hughes, we find that the district court plainly erred in imposing a sentence under the federal sentencing guidelines as they existed prior to Booker.[1] Therefore, although we affirm Smith's convictions, we vacate his sentence and remand for proceedings consistent with Hughes.[2] Id. at 546 (citing Booker 125 S. Ct. at 764-65, 767 (Breyer, J., opinion of the

---

[1]As we noted in Hughes, 401 F.3d at 545 n.4, "[w]e of course offer no criticism of the district judge, who followed the law and procedure in effect at the time" of Smith's sentencing. See generally Johnson v. United States, 520 U.S. 461, 468 (1997) (stating that an error is "plain" if "the law at the time of trial was settled and clearly contrary to the law at the time of appeal").

[2]Although the Sentencing Guidelines are no longer mandatory, Booker makes clear that a sentencing court must still "consult [the] Guidelines and take them into account when sentencing." 125 S. Ct. at 767. On remand, the district court should first determine the appropriate sentencing range under the Guidelines, making all factual findings appropriate for that determination. Hughes, 401 F.3d at 546. The court should consider this sentencing range along with the other factors described in 18 U.S.C. § 3553(a) and then impose a sentence. Id. If that sentence falls outside the Guidelines range, the court should explain its reasons for the departure as required by 18 U.S.C. § 3553(c)(2). Id. The sentence must be "within the statutorily prescribed range and . . . reasonable." Id. at 547.

Court)).  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED IN PART, VACATED IN PART,
AND REMANDED